UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PABLITA MALLOY,**

        **Plaintiff,**

vs.                                              Case No.  8:04-cv-00626-MSS

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____/

## ORDER

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying claims for disability insurance benefits and supplemental security income under the Act.[1]

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

**I.     BACKGROUND**

      A.     Procedural History

Plaintiff applied for disability insurance benefits and supplemental security income on February 21, 2001.  (T. at 10).  Plaintiff alleged an onset of disability on February 15,

---

[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the district court has referred the matter for final disposition.

2001, due to left shoulder pain, headaches, and depression. (T. at 11). Her claim was denied initially and on reconsideration. (T. at 10). On January 23, 2004, the Appeals Council denied review of the April 8, 2003, ALJ decision. (T. at 1-2). On April 14, 2003, Plaintiff filed this action for review.

      B.      Medical History and Findings Summary

Plaintiff's medical history is set forth in the ALJ's decision. By way of summary, Plaintiff was diagnosed as alcohol dependent with a depressive disorder. In addition, the medical evidence indicates that Plaintiff was suffering from a somatoform pain disorder, as well as a rotator cuff tear of the left shoulder with adhesive capsulitis and lumbar strain. (T. at 11-12).

After considering the evidence, including medical records from Plaintiff's treating and examining physicians, the ALJ found that Plaintiff does have physical and mental impairments that are severe within the meaning of the Regulations. The ALJ originally stated that the impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (T. at 12). However, the ALJ subsequently found that Plaintiff's mental impairments were severe enough to meet the criteria of Listing 12.04A and B of the Listing of Impairments. (T. at 16). Nevertheless, the ALJ ultimately found that Plaintiff's use of alcohol was material to this finding of disability. (T. at 17). Accordingly, the ALJ assessed Plaintiff's ability to work at the fourth and fifth stages of the sequential analysis in the absence of her alcohol use.

The ALJ evaluated Plaintiff's residual functional capacity ("RFC") to determine if she could return to her past relevant work or other work existing in significant numbers in the national economy. (T. at 18). The ALJ found that Plaintiff retained the RFC to perform a

restricted range of sedentary to a restricted range of light work. (T. at 19). As such, the ALJ concluded that Plaintiff was incapable of performing any of her past relevant work. (T. at 20). Based on the testimony of the Vocational Expert ("VE"), however, the ALJ determined Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including a machine tender or a production inspector. (T. at 21). As such, the ALJ concluded that Plaintiff is not disabled under the Act.

## II.   STANDARD OF REVIEW

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law de novo. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard. See McDaniel v. Bowen, 800 F.2d 1026, 1029-1030 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983). If the reviewing court is unable to determine from the Commissioner's decisions that the proper legal standards were applied, then a remand to

the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

Plaintiff contends that the decision of the Commissioner must be reversed or, at a minimum, remanded because the ALJ did not use the correct legal standard in determining that Plaintiff's alcohol use is material to a finding of disability.  Plaintiff contends further that the ALJ's decision that Plaintiff's alcohol use is material to a finding of disability is not supported by substantial evidence in the record.

For the reasons that follow, the Undersigned **ORDERS** that the decision of the Commissioner be **AFFIRMED**.

### III.   DISCUSSION

Plaintiff asserts that the ALJ made a legal error in finding that Plaintiff's use of alcohol was material to a finding of disability.  In support, Plaintiff points to one sentence in the ALJ's decision where the ALJ stated, "the claimant's significant depression cannot be separated from her use of alcohol, as there is no indication that her mental status when she is not drinking would be disabling."  (T. at 18) (emphasis added).  The Commissioner responds that the ALJ properly evaluated the materiality of Plaintiff's alcohol abuse and that Plaintiff failed to meet her burden of establishing that her alcohol use is not a material factor to a disability determination.

By law, an individual is not considered disabled, even if the individual meets the definition of disabled under the Social Security Act, if alcoholism or drug addition would be a contributing factor material to the determination that the individual is disabled.  42 U.S.C. § 423(d)(2)(c).  To determine whether alcohol or drug addiction is a contributing factor

4

material to the determination of disability, the ALJ must assess whether the individual would still be disabled if the alcohol or drugs were not a factor. 29 C.F.R § 404.1535(b)(2). Plaintiff bears the burden of proving the disability would exist in the absence of an alcohol or drug addiction. Doughty v. Afpel, 245 F.3d 1274, 1276 (11th Cir. 2001).

The relevant portion of the Social Security Teletype, an internal Social Security Agency Communication explaining how to evaluate alcohol and drug cases, cited in abbreviated form by Plaintiff, states:

> Q: The most complicated and difficult determinations of materiality will involve individuals with documented substance use disorders and one of [sic] more other mental impairments. In many of these instances, it will be very difficult to disentangle the restrictions and limitations imposed by the substance use disorder form [sic] those resulting from other mental impairment(s). Can any examples be provided for how to handle the materiality determination in these situations, or can any guidance be provided for the type of information that should be used in trying to assess the impact of each impairment?
>
> A. We know of no research data upon which to reliably predict the expected improvement in a coexisting mental impairment(s) should drug/alcohol use stop. The most useful evidence that might be obtained in such cases is that relating to a period when the individual was not using drugs/alcohol. Of course, when evaluating this type of evidence consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence. When it is not possible to separate <u>the mental restrictions and limitations</u> imposed by DAA and the various other mental disorders shown by the evidence, a finding of "not material" would be appropriate. Emergency Teletype, Office of Disability, Social Security Administration, "Questions and Answers Concerning DAA from July 2, 1996 Teleconference-Medical Adjudicators–ACTION," August 30, 1996. (emphasis added).

The Eleventh Circuit has declined to determine whether the Emergency Teletype is binding in this Circuit or even on the Social Security Administration as agency policy.

5

Doughty, 245 F.3d at 1281 n.4.[2]  Plaintiff notes that there is some question as to whether the teletype is binding and argues that it at least provides guidance. (Dkt. 13 at p.12).  In Doughty, the Eleventh Circuit did find that a claimant bears the ultimate burden of proving that his or her alcoholism or drug addiction is not a material factor to a disability determination.  Id. at 1280.

Here, the Court need not address whether the teletype is binding in this Circuit because, despite the sentence referred to by Plaintiff, the ALJ clearly procedurally separated the effects of Plaintiff's alcohol use from her depression in the absence of alcohol.  This separation is evidenced by the fact that the ALJ proceeded through the five step evaluation process evaluating Plaintiff's functional capacity in the absence of Plaintiff's alcohol use, considering Plaintiff's full psychological history.

Plaintiff's first psychological evaluation was conducted by Dr. Edney on October 2, 2001.  (T. at 129).  Dr. Edney reported that Plaintiff did not drink alcohol.  (T. at 190).  During Dr. Edney's examination, Plaintiff started crying uncontrollably and was forced to leave the room.  (T. at 191).  Dr. Edney diagnosed Plaintiff with an adjustment disorder with depressed mood as a result of losing her job and being unable to support her three

---

[2] Other circuit and district courts have followed the directives of the teletype as if they were binding.  For example, the Eighth Circuit cites to the teletype for the proposition that when there is a tie on the issue of materiality of alcoholism, the plaintiff shall prevail.  Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003).  In Clark v. Apfel, an Oregon federal district court, reversed the decision of the Commissioner because the ALJ failed properly to follow the mandate in the teletype.  98 F. Supp. 2d 1182, 1185 (D. Or. 2000).  In Clark, the ALJ found that "[i]t is impossible to separate the effects of the claimant's long term polysubstance dependence and abuse from other possible mental disorders."  Id. (emphasis added).  The court stated that following the mandate of the teletype, this finding should have led the ALJ to conclude that the drug abuse was not material to the finding of disability and therefore that the plaintiff was eligible for benefits.  Id.

6

children. (T. at 191). He did not assign a GAF score but recommended that Plaintiff receive individual counseling. (T. at 191).

Plaintiff underwent a second psychological evaluation with Dr. Gonzalez on February 13, 2002. (T. at 227). At this time, Plaintiff reported drinking two or three glasses of wine and gin (although there is no indication as to frequency). (T. at 229). Dr. Gonzalez diagnosed Plaintiff with major depression and assigned Plaintiff a GAF of 50.[3] (T. at 233). Dr. Gonzalez reported that Plaintiff's depression was mainly related to her accident at work that took place on March 6, 2000. (T. at 233). Dr. Gonzalez opined that Plaintiff could not perform even light duty, part-time work on a continuous basis at that time. (T. at 233). However, Dr. Gonzalez also stated that the validity of his testing was in question. Dr. Gonzalez offered explanations for the obtained results, including faking bad, inadequate reading ability, psychotic thought process, or a cry for help. (T. at 229). On May 8, 2002, Dr. Gonzalez noted that Plaintiff was "drinking a lot" and "gets drunk every other day" and that Plaintiff was "trying to drowned [sic] her pain and her troubles in alcohol." (T. at 226).

Plaintiff underwent a third psychological evaluation with Dr. Weller on September 20, 2002. (T. at 235). Dr. Weller reported that during the preceding year Plaintiff had been drinking gin and beer excessively in large amounts "until she passes out on the couch." (T. at 240). He noted that she "shakes all over and her hands tremble." (T. at 240).

---

[3] GAF stands for Global Assessment of Functioning. It is a numeric scale ranging from 1 through 100 used for measuring the overall severity of psychiatric disturbance. A GAF of 50 indicates "serious symptoms [or] any serious impairment in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 4th Edition, Washington D.C., 32 (1994).

Plaintiff was diagnosed with a major depressive disorder and assigned a GAF of 40.[4]  (T. at 248).  Dr. Weller was the first doctor to diagnose Plaintiff with probable alcohol dependence.  (T. at 248).  He noted that "her use of alcohol has probably had a number of adverse consequences on her functioning . . . ."  (T. at 246).  Dr. Weller found that Plaintiff required in-patient psychiatric treatment due to her pattern of alcohol dependence.  (T. at 249).

Plaintiff's final psychological evaluation was conducted by Dr. Pandya on January 7, 2003.  (T. at 254).  Dr. Pandya reported that Plaintiff had been drinking heavily and drinks until she passes out.  (T. at 255).  Dr. Pandya reported that Plaintiff's primary problem was her alcohol abuse and diagnosed her with alcohol dependence and a depressive disorder.  (T. at 263).  Dr. Pandya assigned a GAF of 50-55.

After citing to the records of Drs. Weller and Pandya, the ALJ noted that Plaintiff's "significant depression cannot be separated from her use of alcohol, as there is no clear indication that her mental status when she is not drinking would be disabling."  (T. 18).  In so stating, the ALJ clearly was not indicating that it was impossible to surmise what limitations Plaintiff would have in the absence of alcohol abuse as he went on to do just that.  Specifically, the ALJ noted that Plaintiff's low GAF scores of 40 and 50-55 assigned by Drs. Gonzalez and Pandya could not be given weight in the absence of alcohol abuse because Plaintiff admitted to drinking heavily when she was assigned these GAF scores.  (T. at 18).

---

[4] A GAF of 40 indicates "some impairment in reality testing or communication [or] major impairment in several areas, such as work or school, family relations, judgment, thinking or mood."  *Id.*

On the strength of this evidence, Plaintiff argues that the medical records of Dr. Edney in October 2001 indicate depression in the absence of alcohol because Dr. Edney recorded that Plaintiff stated that she did not drink alcohol. (T. at 189-191). However, Dr. Weller indicated in September 2002 that, according to Plaintiff, "about a year ago she started to drink heavily, three to four glasses of gin daily on top of one or two quarts of beer in the afternoon." (T. at 242). Dr. Weller reported that Plaintiff never drank excessively before. (T. at 240). These records contradict Plaintiff's assertion that she was not using alcohol at the time her depression was first documented by Dr. Edney and provide evidence that she was using alcohol when her depression was first documented by any physician. Further, on August 11, 2000, Plaintiff denied any depression in a visit to the Watson Clinic. (T. at 135). It was also noted at the Watson Clinic in June 2000 that Plaintiff had a negative social history for alcohol use. (T. at 137). The only evidence of this history would have been the Plaintiff's reports of alcohol use.

Thus, the ALJ gave little weight to the findings of Dr. Weller and Dr. Pandya as to Plaintiff's ability to function when not abusing alcohol because both doctors examined Plaintiff when she was drinking excessively. (T. at 18). The ALJ, therefore, found that Plaintiff's depression as diagnosed by Dr. Weller and Dr. Pandya is secondary to, and exacerbated by, Plaintiff's alcohol abuse. (T at 17). Further, while Dr. Gonzalez did opine that Plaintiff was unable to work, his opinion was rendered when Plaintiff was drinking two or three glasses of wine and gin and Dr. Gonzalez himself questioned the validity of his test results. (T. at 229).

The ALJ proceeded to find that in the absence of alcohol abuse, Plaintiff retained the ability to perform a restricted range of sedentary to a restricted range of light work, with

9

a sit/stand option and only 50 percent use of her left hand. (T. at 19). Plaintiff also required an environment with limited contact with the public. Plaintiff had mild limitations in the areas of activities of daily living, and in concentration, persistence, or pace and moderate limitations in the area of social functioning. According to the testimony of the Vocational Expert ("VE"), who considered a hypothetical that encompassed these limitations, there were jobs in the national economy which Plaintiff could perform, including copier operator, machine tender, and production inspector. (T. at 20).

Because the ALJ substantively separated the effects of Plaintiff's depression and alcohol use, the ALJ applied the correct legal standard in evaluating the materiality of Plaintiff's alcohol use on her depression. His findings are consistent with legal standards and supported by substantial evidence in the record.

Accordingly, it is ordered that the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter a separate judgment in favor of Defendant pursuant to Rule 58 of the Federal Rules of Civil Procedure and close this case.

**DONE AND ORDERED** in Tampa, Florida on this 29th day of September 2005.

_____
MARY S. SCRIVEN
United States Magistrate Judge

Copies to:

Counsel of Record